# FARMERS INSURANCE EXCHANGE et al,
*Respondents,*

*v.*

# CHAMBERLAIN et al,
*Appellants.*

(A8211-06768; CA A31420)

712 P2d 172

Terry G. Sundkvist, Portland, argued the cause and filed the briefs for appellants.

Jeffrey M. Batchelor, Portland, argued the cause for respondents. With him on the brief were Richard C. Hunt, Paula B. Weiss, and Spears, Lubersky, Campbell, Bledsoe, Anderson and Young, Portland.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

Plaintiffs sought to enjoin the breach of a noncompetition clause in a contract with defendant Chamberlain. Additionally, plaintiffs alleged that defendant Hansen had interfered in their contractual relationship with Chamberlain.[1] Chamberlain and Hansen counterclaimed. Chamberlain alleged breach of contract, and both Chamberlain and Hansen alleged that plaintiffs had intentionally interfered with their business relationships. The trial court granted summary judgment in plaintiffs' favor on the issue of liability on its claims against both defendants and on defendants' counterclaims. Defendants appeal. We affirm.

In 1971, Chamberlain signed an Agent Appointment Agreement with plaintiffs by which he became a Farmers insurance agent. On April 21, 1982, Chamberlain wrote to plaintiffs and resigned his agency, effective July 14, 1982. Relative to termination of the agency, paragraph G of the agreement provides:

"G.   In the event of termination of this Agreement, the Companies will normally pay 'Contract Value' to the Agent or heirs in the manner hereinafter set out. If the Companies do not pay the 'Contract Value,' the Agent or heirs may, in writing, nominate a successor(s). Such nominee(s) must be acceptable to the Companies, and be ready, willing, and able to operate the Agency within thirty (30) days of termination of this Agreement.

"The Agent, or heirs, may negotiate with such nominee(s) for the purchase of the Agent's interests under this Agreement, but the sale price shall in no event exceed the 'Contract Value.' "

Paragraph G also sets out a formula for the computation of "contract value." It then provides:

"When an Agent dies or becomes totally disabled, Contract Value will be paid in one installment. Otherwise, Contract Value will be paid in not less than three equal installments, and at not less than six month intervals. The number of installments and interval of payment, subject to the above stated minimums, is at the election of the Agent. The first

---

[1] Originally, plaintiffs also sought damages for breach of the noncompetition clause and for Hansen's alleged interference. Plaintiffs abandoned those claims when they moved for summary judgment.

installment will be paid as soon as possible following termination."

Paragraph H defines the agent's duties, which include noncompetition, after payment of "contract value":

"H. The Agent agrees to transfer and assign all of the Agent's interest under this Agreement and Agency (including any interest in the telephone numbers and leased or rented office location) to the Companies or any other purchaser in the event they make payment to the Agent pursuant to Paragraph G of this Agreement. For the payment received, the Agent further agrees that for a period of one year following the date of sale the Agent will neither directly or indirectly solicit, accept, or service the insurance business of any policyholder of record in the agencies of this district as of the date of sale. The Agent acknowledged that all manuals, lists and records of any kind (including information pertaining to policyholders and expiration) are the confidential property of the Companies and agrees they shall not be used or divulged in any way detrimental to the Companies and shall be returned to the Companies upon termination of the Agency."

By a letter dated April 26, 1982, plaintiffs accepted Chamberlain's resignation and invoked paragraphs G and H of the agreement.[2] On July 13, 1982, plaintiffs informed

---

[2] On January 25, 1982, before Chamberlain's letter of resignation, Farmers wrote to Chamberlain and all other agents concerning paragraphs G and H:

"We believe it most important to our mutually profitable relationship that there exist a clear understanding of the provisions of Paragraphs G and H of the Farmers Agency Appointment Agreement.

"In effect Paragraph G of the Agents Appointment Agreement gives the Companies the right to pay contract value, a right which the Companies intend to exercise under normal circumstances.

"Several recent Agency terminations have resulted in legal actions by Farmers against former agents who have terminated and refused contract value. In many cases, those agents attempted to convert the Farmers' policies to another carrier. We have been generally successful in securing court injunctions against the agents in these cases.

"You should be aware that Paragraph H establishes, as part of our contractual arrangement, that upon tender of payment of contract value the agent is required to transfer all of his or her interest in the agency to the Companies and to refrain for a period of one year from soliciting, accepting or servicing the insurance business of the Companies' policyholders in the terminated agent's former district.

"You should also be advised that, although, under limited and exceptional circumstances, the Companies have waived this contractual feature they do not intend to waive it as a general practice. Any agent planning termination of his or

Chamberlain, by letter, that the "contract value" of his agency was $27,420 and that, on his behalf, they had paid a debt to his credit union in the amount of $7,047.70 and a tax lien to the IRS in the amount of $6,278.06, leaving a balance due of $14,094.24. A check for $4,693.08, one-third of the balance due, accompanied the letter. The letter stated that the remaining balance would be paid in two equal installments at six-month intervals. On November 12, 1982, four months after the agency termination, and after the filing of the complaint in this case, Chamberlain borrowed an additional $9,284.49 from the credit union and assigned his "contract value" as security for the loan. After accepting the partial payment from plaintiffs, he continued to service some of plaintiffs' insureds and referred others to Hansen.

■     After Chamberlain answered, the trial court issued a preliminary injunction enjoining him from soliciting or servicing plaintiffs' insurance clients until July 13, 1983, one year after he had resigned as an agent. As a threshold matter, plaintiffs suggest that the case is moot, because the injunction has expired and their damage claims have been abandoned. However, the issue of plaintiffs' potential liability on its undertaking for injunctive relief, ORCP 82A(1)(a), may be affected by a determination of the basic controversy, *see North Pacific Lumber Co. v. Oliver,* 286 Or 639, 644, 596 P2d 931 (1979); *Kelite Prod., Inc. v. Brandt et al,* 206 Or 636, 650-51, 249 P2d 320 (1956); *Thomas v. Penfold,* 23 Or App 168, 170, 541 P2d 1065 (1975), and, therefore, the case is not moot.

■     Defendants make four assignments of error, all to the effect that the trial court erred in granting summary judgment on all claims and counterclaims and all turning on whether there was a genuine issue of material fact as to whether Chamberlain had the right to decline "contract value" and elect to compete with plaintiffs. Defendants concede in their brief that their assignments of error do not have merit if the contract unambiguously provides that plaintiffs have the right to elect whether to pay contract value.

The pertinent language in the contract states:

her agency and who is not disposing of the agency under the family rights provisions (Paragraph F) should therefore expect to observe the requirements of the agent's agreement and receive contract value."

"In the event of termination of this agreement, the Companies *will normally pay* 'contract value' * * *. *If the Companies do not pay,* the Agent or his heirs may, in writing, nominate a successor * * *." (Emphasis added.)

The language is unambiguous. Plaintiffs have the option to elect whether to pay contract value. If they elect not to pay contract value, the agent may sell his agency to others. Otherwise, the agent must accept payment of contract value and abide by the noncompetition provisions of the contract.

In this case, plaintiffs elected to pay contract value and, therefore, Chamberlain was bound by the noncompetition provisions. Defendants' assignments of error are without merit.

Affirmed.